In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-02-00004-CV


______________________________




IN THE ESTATE OF


TIMOTHY KEVIN OLIVE,


DECEASED




 


On Appeal from the County Court


Bowie County, Texas


Trial Court No. 38,079




 




Before Morriss, C.J., Grant and Ross, JJ.


Opinion by Justice Grant



O P I N I O N



 Rebecca Tiffie, the appellant in this case, has filed a motion asking this court to dismiss her
appeal. Pursuant to Tex. R. App. P. 42.1, her motion is granted.

 The appeal is dismissed.




 Ben Z. Grant

 Justice


Date Submitted: July 1, 2002

Date Decided: July 2, 2002


Do Not Publish




BR1">
THE COURT: Well, we don't have any place to go. I've got to have the court
reporter. Well, y'all don't have to stand up. I'm sorry. That will make you a little
more comfortable I guess.


[JUROR]: I guess the way I feel is another man has been previously wrongly
convicted and I want to make sure that - y'all have entrusted me and my better
judgment and I want to make sure that I'm making the right decision here, that I'm not
putting another innocent man in jail. And my question was to him is can a juror
change their mind after we have come to the conclusion of guilty. 


THE COURT: After the verdict has been read and accepted, the answer would be
no. 


[JUROR]: Okay.


THE COURT: Prior to that time when you-all are deliberating --


[JUROR]: Right.


THE COURT: -- and people are exchanging thoughts and ideas about the evidence,
at those -- during those times, then it probably would not be unusual for a juror to
change their mind and even maybe more than one time. But once the verdict has
been accepted by the court which it was yesterday and announced, at that point there
would be no, no way that you could change your mind on that now.


[JUROR]: Okay.


THE COURT: Was there anything -- is there anything else that is concerning you?


[JUROR]: Well, all along along [sic] during the trial I was back and forth and I was
real, yes, this evidence, he clearly did it and, well, no, maybe he didn't, maybe
someone else did it. There has been so much admittance of perjury and it makes it
really hard and it really makes me question why -- it makes me question the justice
system, number one, and it makes me question why these people have not been
convicted of these perjuries and, you know, I -- I rely on the justice system to do
what's right and that puts a doubt in my mind as to what I'm hearing as to what's
really the truth. I mean, even the officials, the law people, you know, the officials.
And at first I said, yes, I was definitely convicted that he was and I felt somewhat
under pressure by everybody else because they were strongly saying yes, and then we
talked about it and because of some things that other people, you know, I'm hearing
what everybody else has to say, I relied on that, and I went with that, you know, I
went more towards yes, he was than not. But then I started thinking about the other
case, the previous case with Mr. Barber and some testimony. I guess just when I left
here yesterday the thing that really got me is, and there's so much stuff, I'm trying to
take it all in, everything that was said, if I recall correctly, the people in the Suburban
did say that they identified Shane as having the gun in front of the Suburban and
waiving [sic] the gun and seeing him shoot the gun. If that's what brought this up,
if that's the case, how come, was that told in the first trial, you know, how come, if
Shane is the one, how come he wasn't convicted in the first trial for that, you know?


THE COURT: Now anything --


[JUROR]: -- that's where my doubt is coming from. 


THE COURT: Anything as far as questions like that or the first trial that was not
evidence that was admitted during this trial, then it's not something that you-all can
even consider.


[JUROR]: I understand.


THE COURT: Now I understand what you're saying about questions that might
come to you out of that.


[JUROR]: I guess I'm just trying to find -- I just want to know in my heart that, and
I prayed about this, that I'm doing the right thing.


THE COURT: Yeah, I know. Well, you're not -- no one here is critical of you, okay. 
You're not among enemies in this room at all and I understand what you're saying,
but the answer to your question, although it may not necessarily be what you want to
hear, it won't be what you want to hear, or it's not necessarily what I want to tell you
is that that part is over and that there's not any changing of minds after that. I think
now what we're going to do now is I'm going to let you go back to the jury room and
give you a few minutes before we start, and then we'll go ahead and start with the
punishment phase. After the case is over, then I might can explain and answer some
questions. During the trial I'm not allowed to comment on the evidence. I can't do
that. I wouldn't do that anyway, but I have to be very careful about what I say
instructing jurors.


[JUROR]: I understand.


THE COURT: But the answer to your question is that that part of the trial is
concluded so we're now in a second part.


[JUROR]: I understand.


THE COURT: So I appreciate you coming forward. You did the right thing. You
did the exact right thing in letting us know that you were having those concerns.


[JUROR]: I was just wondering if I was able to talk to the other jurors before we
came out here and just I guess verbalize my feelings and make sure what that [sic]
I'm hearing is correct and that these feelings that I'm having I guess are that I'm right
in feeling the way I'm feeling. You know what I'm saying.


THE COURT: Well, there's nothing that prohibits you-all from, during your
deliberations, talking about the case. Okay. Right now you're not deliberating, but
during your deliberations, I mean, that's what the jurors are supposed to do is discuss
the evidence. So you'll have that opportunity when the case is sent back to you on
punishment. 


[JUROR]: Okay. I guess it's a cleansing of my conscience too.


THE COURT: And I'm glad you did what you did instead of keeping it inside of
you, okay. And we'll give you a few minutes and then we'll call all of you back in. 
And I'm sorry we didn't have a private place. We do at my usual place, but we don't
have here. Thank you.


 (Juror escorted to jury room by bailiff)


[Defense Counsel]: And I move for a mistrial.


THE COURT: Any response?



[Prosecutor]: Not entitled to it. She can't impeach her verdict.


THE COURT: I'm going to deny it. Off the record now. 


 Wood argues that the comments made by the trial judge, in response to juror's expressed
concerns, constituted unauthorized communication with a juror, in violation of Tex. Code Crim.
Proc. Ann. art. 36.27 (Vernon 1981), and further constituted tampering with the jury process,
commenting on the weight of the evidence, giving an improper additional instruction, and inquiring
into the jury deliberation thought process.

 Wood cites Llorance v. State, 999 S.W.2d 866 (Tex. App.-Houston [14th Dist.] 1999, no
pet.), in which, while that jury was being polled, one juror began questioning the trial judge
regarding whether, if he did not agree with the verdict, the jury would have to return and deliberate
further, until they did agree on a verdict. Id. at 867-68. After an extended discussion, the trial judge
sent the jurors back, and they returned a second time with a unanimous verdict. Id. at 868. The
Houston court held that, by failing to properly object to the trial court's actions, the appellant had
waived his right to appeal. The court further determined that, even had error been properly
preserved, the trial court's actions were within the jury polling requirements set out in Tex. Code
Crim. Proc. Ann. art. 37.05 (Vernon 1981). (1)

 Llorance does not require further jury deliberations on guilt or innocence in the present case,
because the situations are different. In Llorance the juror's questions were raised during a jury poll,
thus specifically triggering Article 37.05. In the present case no juror concern was expressed until
after the verdict was read aloud, no dissent was heard, and no jury poll was requested, thus
specifically triggering Article 37.04.

 Wood's counsel specifically declined to request a jury poll, and the verdict was accepted. 
Article 37.04 provides that, when the jury agrees on a verdict, is brought back into court, and states
that it so agreed, the verdict is to be read aloud. If the verdict is in proper form, no juror dissents
from it, and neither party requests that the jury be polled, Article 37.04 requires the verdict to be
entered in the court's minutes. The juror's remarks were made after a jury poll was waived and the
verdict was accepted, in fact, the next day. Wood is not entitled, thereafter, to have the jury return
and continue deliberations, as he would have been had the juror's remarks been made during a jury
poll.

 Wood alleges unauthorized communications between the court and the juror. Tex. Code
Crim. Proc. Ann. art. 36.27 regulates communications between the court and jurors during
deliberations. Questions from the jury must be in writing submitted through the bailiff, and answers
thereto must be given in writing and read in open court in front of the defendant and defense counsel. 
Even if communications are not carried out in strict accord with this article, however, there is no
reversible error when such communications do not amount to additional instructions on the law or
some phase of the case, such as communications regarding "administrative matters." Jones v. State,
963 S.W.2d 826, 829 (Tex. App.-Texarkana 1998, pet. ref'd). Wood cites Daniell v. State, 848
S.W.2d 145 (Tex. Crim. App. 1993). In that case, the jury was deliberating in the punishment phase,
in which the state had argued for confinement in the Department of Corrections, and defense counsel
had asked that the appellant be sentenced to a community corrections facility. The jury asked the
trial judge whether the county jail would be such a facility, and if not, whether there were any such
facilities in the county. The trial court eventually responded with a reply, over counsel's objection,
that he knew of no such facilities in the county, but that there may be some nearby. Id. at 147. The
Texas Court of Criminal Appeals found this to be reversible error, because while the additional
instruction was not of a legal nature, it was an additional factual matter, not authorized by Tex.
Code Crim. Proc. Ann. art. 36.14 (Vernon Supp. 2002). Daniell, 848 S.W.2d at 147. 

 In contrast, Wood's jury had completed its deliberations on guilt/innocence, and its verdict
had been accepted. The trial judge properly told the juror she could not subsequently change her
verdict. The judge did permit her to air her personal concerns about whether she had done the right
thing in view of the circumstances of this trial, i.e., that one innocent person had already been
convicted in this case. The trial judge again told her that, though during deliberations she could
change her mind, once the verdict had been accepted she could not. (2)

 We have carefully read the record. We have found no comment on the weight of the
evidence, no inquiry into the deliberative process of this jury, and no tampering with the orderly jury
process. No additional instructions were given on any law impacting jury deliberations, and no
additional facts were presented to the jury. The trial judge did not comment on the evidence at the
completed guilt/innocence phase. She did not, and could not, comment on punishment evidence,
since none had been produced, and did not state anything to indicate what punishment would be
appropriate.

 Even if there were error in any aspect of the trial court's actions, there could have been no
effect on the guilty verdict, which had already been accepted by that time. And we see no effect on
the punishment phase, which had not then begun.

 Finding no reversible error, the judgment of the trial court is affirmed.


 Josh R. Morriss, III

 Chief Justice


Date Submitted: July 2, 2002

Date Decided: August 22, 2002


Publish
1. Tex. Code Crim. Proc. Ann. art. 37.05 (Vernon 1981) sets out the procedure to be used
for polling the jury, if either party requests it. Under that article, if during the poll any juror dissents
from the verdict, the jury is required to again retire to consider its verdict.
2. Tex. R. Evid. 606(b) provides that, on an inquiry into the validity of a verdict, a juror may
not testify as to any matter or statement occurring during jury deliberations, or to the effect of
anything on any juror's mind or emotions or mental processes, as influencing any juror's assent or
dissent from the verdict. In Bennett v. State, 742 S.W.2d 664, 675 (Tex. Crim. App. 1987), vacated
& remanded on other grounds, 486 U.S. 1051, 108 S.Ct. 2815, 100 L.Ed.2d 97 (1988), the Texas
Court of Criminal Appeals held that a juror's changing his or her vote to avoid a hung jury does not
entitle the defendant to a new trial.